# UNITED STATES DISTRICT COURT

**DISTRICT OF CONNECTICUT**

**KASAUN MOALES**,
Plaintiff, v.
**LAND ROVER CHERRY HILL, and DOES 1-10**, Defendants.

**Case No.: [To be assigned]**
**COMPLAINT FOR DECLARATORY RELIEF, ACCOUNTING, INJUNCTIVE**
**RELIEF, AND FRAUDULENT CONCEALMENT**

# INTRODUCTION

1. Plaintiff **Kasaun Moales**, a consumer and principal with an **equitable interest** in a financial transaction arising from his **credit application**, brings this action against **Land Rover Cherry Hill** ("Defendant" or "Dealer") and DOES 1-10, for **failure to disclose material financial transactions, fraudulent concealment, unjust enrichment, and deceptive financial practices**.
2. Plaintiff asserts that **the Dealer was the originating creditor**, responsible for extending credit, and that Plaintiff's credit application was the **source of value** that initiated the transaction.
3. Upon information and belief, Defendant **monetized, assigned, transferred, or securitized** Plaintiff's credit contract for financial gain, **without disclosure**, in violation of trust law, Generally Accepted Accounting Principles (GAAP), Financial Accounting Standards Board (FASB) rules, and equitable financial principles.
4. Defendant's failure to provide an **accounting** while simultaneously demanding payment constitutes **fraudulent misrepresentation, unjust enrichment, and an attempt at double recovery**.
5. Plaintiff seeks **full accounting** of any securitization, assignment, or financial transactions related to his credit application and credit contract and **injunctive relief** to prevent further financial exploitation.

# JURISDICTION AND VENUE

6. This Court has jurisdiction under **28 U.S.C. § 1331** (federal question) because the matter involves **securitization**, **consumer credit practices**, **financial disclosures**, and **fiduciary duties** under GAAP and FASB standards, which govern financial transactions at the federal level.

7.  This Court also has **diversity jurisdiction under 28 U.S.C. § 1332** because the parties are from different states, and the amount in controversy **exceeds $75,000**, considering the valuation of the credit contract, securitization proceeds, and Defendant's unjust enrichment.
8.  Venue is proper under **28 U.S.C. § 1391** because the events giving rise to this action occurred within this District.

# PARTIES

9.  Plaintiff, **Kasaun Moales**, is a natural person with a **vested equitable interest** in the financial transaction initiated through his credit application.
10. Defendant, **Land Rover Cherry Hill**, is a business entity engaged in automobile sales and financing, operating in the state of New Jersey.
11. Plaintiff is unaware of the true names and capacities of **DOES 1-10**, who are believed to have participated in the **securitization, assignment, or financial manipulation** of Plaintiff's credit contract.

# FACTUAL ALLEGATIONS

## A. The Dealer as the True Lender and Credit Liability Owed to Plaintiff

12. Plaintiff submitted a credit application to Defendant for the purpose of purchasing a vehicle.
13. The credit application states:
    *"The consent applies to the dealer, who is the originating creditor in this transaction, as well as any assignee who may purchase your credit contract."*
14. This confirms that:

    • The **Dealer originated the credit**, meaning it was the actual financial institution extending credit.
    • Plaintiff's **credit application was the source of value** that enabled the transaction.
    • If the contract was **assigned or securitized**, the Dealer received **financial compensation** and had a duty to disclose.

## B. Securitization and the Extinguishment of Consumer Obligation

15. Upon information and belief, Plaintiff's credit contract was:

    • **Monetized** (converted into a financial asset).
    • **Assigned** to third parties.

- **Pooled into a securitized trust**, such as an asset-backed security (ABS) or collateralized debt obligation (CDO), for institutional profit.

16. Securitization **fundamentally changes** the nature of the contract, meaning:

- The Dealer was **compensated** through securitization proceeds.
- The contract became a **traded security**, no longer functioning as a traditional loan.
- Any demand for payment without disclosing these transactions constitutes **double recovery and unjust enrichment**.

17. Under **GAAP and FASB rules**, once a financial asset is securitized:

- The **debt obligation is removed** from the original creditor's balance sheet.
- The original creditor (Dealer) **no longer bears risk or loss** associated with the contract.
- Any collection attempts must come from a **party that can prove it retains financial liability**.

18. If Defendant or any other entity demands payment, they must provide **full accounting** to prove:

- The liability has not already been **extinguished through securitization proceeds**.
- They still **hold a valid financial interest** in the contract.

# CAUSES OF ACTION

## COUNT I – DECLARATORY RELIEF (28 U.S.C. § 2201)

19. Plaintiff realleges all prior paragraphs as if fully set forth herein.
20. An **actual controversy** exists as to whether Defendant has been **fully compensated through securitization**, thereby extinguishing Plaintiff's obligation.
21. Plaintiff seeks a **declaration** that:

- His **credit application was a financial asset** improperly **monetized and securitized**.
- The Dealer, as the **true lender**, must disclose any **financial transactions** related to the contract.
- Plaintiff's **financial obligation is suspended** until a full **accounting** is provided.

## COUNT II – DEMAND FOR ACCOUNTING

22. Plaintiff demands a **full and transparent accounting** of his credit contract, including:

- All **securitization, bundling, or secondary market transactions**.
- All **payments received from third parties**.

- Proof that Defendant still retains a **valid claim to collect payments**.

## COUNT III – INJUNCTIVE RELIEF

23. Defendant continues to **demand payment** without disclosing financial transactions.
24. Without court intervention, Defendant will continue **fraudulent concealment** and **unjust enrichment**.
25. Plaintiff seeks an **injunction prohibiting** Defendant from:

- Further **assigning, securitizing, or selling** his credit contract.
- Taking any **adverse action** against Plaintiff until full **disclosure and accounting** is provided.

## COUNT IV – FRAUDULENT CONCEALMENT

26. Defendant **concealed material facts** regarding the **securitization, monetization, and assignment** of Plaintiff's credit contract.
27. Defendant **failed to disclose** that Plaintiff's obligation may have been **extinguished** through securitization proceeds.
28. Plaintiff was harmed by Defendant's **intentional failure to disclose material financial transactions**.
29. Defendant's actions constitute **fraudulent concealment** under **federal and state consumer protection laws**.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

1. A **declaration** that Plaintiff's credit contract was improperly securitized.
2. A **court-supervised accounting** of all financial transactions related to the contract.
3. An **injunction** stopping Defendant from further financial transactions until accounting is provided.
4. **Compensatory and punitive damages** for fraudulent concealment.
5. Any other relief this Court deems just and proper.

Dated: **March 25, 2025**

Respectfully submitted,

**Kasaun Moales**
55 Wessels Ave Apt 18 Bridgeport, Connecticut 06610
2038816217
Kasaun.moales@yahoo.com

# AFFIDAVIT OF SECURITIZATION, EQUITABLE INTEREST, AND DEMAND FOR ACCOUNTING

I, **Kasaun Moales**, a natural person and principal with a vested equitable interest in the financial transaction initiated through the submission of my credit application, do hereby affirm under penalty of perjury that the following statements are true, correct, and made upon my firsthand knowledge and belief:

# I. PRELIMINARY STATEMENT

1. This affidavit serves as a **formal declaration of my equitable interest** in the financial transaction arising from my credit application submitted to **Land Rover Cherry Hill (hereinafter "Dealer")**, who, per the agreement, is the **originating creditor, lender, and financial institution** responsible for extending credit in this transaction.
2. Because the **Dealer originated the credit**, it had a **pre-existing credit liability** to me as the consumer. The Dealer may have subsequently **monetized, assigned, transferred, or securitized** my credit contract for financial gain.
3. Upon information and belief, my **credit contract was securitized**—meaning it was **packaged with other contracts, pooled into an investment vehicle, and sold on secondary financial markets** for institutional profit.
4. Because my financial asset was securitized, **no further obligation is owed until the credit liability is performed**—meaning **the purpose of the tender must be fulfilled** by delivering the vehicle as agreed.
5. Any continued demand for payment **without a full accounting of the securitization process, proceeds received, and credit adjustments applied** constitutes **fraudulent misrepresentation and unjust enrichment**.

# II. STATEMENT OF FACTS

## A. The Dealer as the True Lender and the Credit Liability Owed to the Consumer

6. The credit application agreement explicitly states:
> "The consent applies to the dealer, who is the originating creditor in this transaction, as well as any assignee who may purchase your credit contract."

7. This confirms that:
   - The **Dealer originated the credit and was the financial institution that processed the application.**
   - My **credit application was the source of value that created the credit contract,** meaning I was the **originator of credit,** and the **Dealer, as the originating creditor, had a credit liability to me.**
   - The Dealer, **not a third-party financial institution, controlled the credit. process from origination to execution.**
8. Since the Dealer **may have assigned, transferred, or securitized the contract,** it **received compensation,** meaning:
   - My **credit contract was a valuable financial instrument that generated income.**
   - The Dealer **had an obligation to disclose the compensation received** from any assignment or securitization.
   - Any **subsequent demand for payment must account for any proceeds already received** from securitization or third-party transactions.

## B. Securitization and the Extinguishment of Consumer Obligation

9. Upon information and belief, my **credit contract was monetized, assigned, or pooled into a securitized trust,** such as an **asset-backed security (ABS) or collateralized debt obligation (CDO),** for financial gain.
10. **Securitization transforms the credit contract into an investment instrument, which alters its nature and the obligations associated with it, meaning:**

   - The **Dealer, as the originating creditor and financial institution, was already compensated** for the obligation through securitization proceeds or assignment.
   - The contract **ceased to be a traditional personal loan and became a traded security.**
   - Any **further demand for payment without disclosing the securitization proceeds may constitute double recovery and unjust enrichment.**

11. Under **GAAP (Generally Accepted Accounting Principles) and FASB (Financial Accounting Standards Board) rules,** when a financial asset is securitized:

   - The **debt obligation is removed from the original creditor's balance sheet.**
   - The **original creditor (Dealer) no longer bears risk or loss associated with the contract.**
   - The **securitization trust, investors, or another financial entity now holds the asset,** meaning any **subsequent collection attempts must come from a party that can prove it retains financial liability.**
12. If my **credit contract was securitized,** the **Dealer or any other entity demanding payment must provide full accounting** to prove:

- The **liability has not been extinguished or discharged** through securitization proceeds or assignment.
- They still hold a **valid financial interest** in the contract.
- Any **funds received from securitization, sale, or assignment have been properly applied to the consumer's obligation**.

## C. The Consumer's Right to a Credit Adjustment Instead of Further Obligation

13. Since the **credit application itself constitutes valuable property and was relied upon to make a credit decision**, its **submission was the tender of value that initiated the financial transaction**. The **Dealer, as the original creditor and financial institution, has already received compensation** through **the monetization, assignment, or securitization** of the application and/or resulting credit contract. Because the **application was submitted as tender, no further performance is required by the consumer**.

14. If the **Dealer or any other party** attempts to demand payment or take adverse action against the application tendered:

- They must **disclose the full nature of the transaction involving the application**, including whether it was **sold, assigned, gifted, or otherwise transferred** to financial institutions.
- They must **prove that they did not receive compensation from securitization, assignment, or other financial monetization** of the credit application or contract.
- They must **produce the full chain of title** to establish that they **still retain a valid claim** to collect payments.
- They must **disclose the amount received from financial institutions and how those proceeds were applied to the consumer's obligation**.

15. Without providing this proof, any **attempt to demand payment or take adverse action constitutes fraudulent concealment and unjust enrichment**, as the obligation was **already satisfied through the application tendered and the subsequent financial transactions executed by the Dealer**. The Dealer cannot claim an unpaid obligation while simultaneously **benefiting from undisclosed financial arrangements involving the credit application or contract**.

# III. DEMAND FOR FULL ACCOUNTING

Pursuant to **trust law, GAAP accounting standards, and equitable principles**, I formally demand:

1. **A complete record of where my credit application was transferred, assigned, or sold**, including:
   - The names of all financial institutions that reviewed or processed my application.

  o The **consideration received by each entity in connection with the assignment, sale, or securitization**.
2. **A detailed ledger** showing how my credit contract has been treated as a financial instrument, including:
  o Any **securitization, bundling, or sale of my contract in financial markets**.
  o Any **secondary market transactions involving my credit obligation**.
3. **A verified accounting of the source of funds** purportedly loaned, proving whether:
  o The Financial Institution **extended capital from its own reserves**. o  The Financial Institution **created an accounting entry based on my contract**.
  o The transaction was **funded through third-party securitization** rather than direct lending.

# IV. EQUITABLE RELIEF REQUESTED

Based on the foregoing, I seek immediate equitable relief as follows:

1. **A declaration that my credit application is a financial asset** that has been improperly **monetized and securitized without full disclosure**.
2. **A declaration that the Dealer, as the originating creditor, was the true lender**, meaning any assignment was a **separate financial transaction requiring full disclosure**.
3. **A declaration that my obligation is suspended until the credit liability is performed**.
4. **A court-supervised accounting** of all financial benefits derived from my credit application and contract.
5. **An injunction prohibiting any further assignment, securitization, or sale of my contract** until a **full accounting is provided**.
6. A declaration that the consumer is entitled to the vehicle as originally intended by the tender, as the transaction's purpose was the acquisition of said vehicle, and any securitization or assignment of the contract does not alter this original purpose.

# V. AFFIRMATION AND SIGNATURE

I affirm that the above statements are true and correct to the best of my knowledge and belief.

**Signed:** _Kasaun Moales_

Kasaun Moales
March 26, 2025

Attached as an exhibit: Credit Application (1 page)

**Dealer Name:** Land Rover Cherry Hill

Dealer Phone # 856 663 2800
Dealer Fax # 856 663-7090

## PLEASE PRINT - INCOMPLETE APPLICATIONS WILL NOT BE PROCESSED.

**INSTRUCTIONS**
You may apply for credit in your name alone, whether or not you are married.
(1) Please indicate whether you are applying for ☒ Individual Credit ☐ Joint Credit ☐ Community Property State ☐ Business Application
(2) ☐ If you are applying for individual credit in your name and relying on your own income or assets and not the income or assets of another person as the basis of repayment of the credit requested, complete only Section A
(3) ☐ If you are applying for joint credit with another person, complete sections A and B. We intend to apply for joint credit

| Applicant | Co-Applicant |
|---|---|

* If you are married and live in a community property state, please complete Section A about yourself and Section B about your spouse. You must sign this application. Your spouse must sign this application only if she wishes to be a Co-Applicant

### A. APPLICANT INFORMATION

| Last Name | First Name | Middle Initial | Social Security Number | Birth Date |
|---|---|---|---|---|
| Moales | Kasaun | | 9106 | 11996 |

| Address | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|
| 55 Wessels Ave | 18 | | | Bridgeport | CT | 06610 |

| Home Phone | Cell Phone | Residential Status | Time at Address | Rent/Mtg Pmt |
|---|---|---|---|---|
| | 2038816217 | ☐ Homeowner ☐ Rent ☒ Family ☐ Other | 13 Yrs ___ Mos | 1600 |

| E-Mail Address | Driver's License No. | Driver's License State | Time at Previous Address |
|---|---|---|---|
| kasaun.moales@yahoo.com | 8693 | CT | ___ Yrs ___ Mos |

| Previous Full Address (if less than 2 years) | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|
| | | | | | | |

| Employer Name | Employment Type |
|---|---|
| Pequonnock Connecticut | ☐ Employed ☐ Unemployed ☐ Self-employed ☐ Military ☐ Retired ☐ Student ☒ Other |

| Salary | Salary Type | Occupation | Length of Employment | Work Phone Number |
|---|---|---|---|---|
| 322,308 | ☐ Weekly ☐ Bi-Weekly ☐ Monthly ☒ Annually | President | 3 Yrs ___ Mos | 4759889243 |

| Previous Employer Name | Previous Employment Type |
|---|---|
| | ☐ Employed ☐ Unemployed ☐ Self-employed ☐ Military ☐ Retired ☐ Student ☐ Other |

| Previous Occupation | Length of Employment | Previous Work Phone Number |
|---|---|---|
| | ___ Yrs ___ Mos | |

Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this obligation.

| Other Income (Monthly) | Source of Other Income | By Signing, you certify that the income entered on this Credit Application is accurate. |
|---|---|---|
| | | X Kasaun Moales |

**Comments**
This credit application is tender and a financial asset, It's acceptance affirms It's value and the consumer's equitable interest in all resulting financial instrument and transactions. Stock R13069, VIN SALI29F91RA406681, TCP-$221,508.65

### AGREEMENT

You understand and agree that you are applying for credit by providing the information to complete and submit this credit application. We may keep this application and any other application submitted to us and information about you whether or not the application is approved. You certify that the information on the application and in any other application submitted to us, is true and complete. You understand that false statements may subject you to criminal penalties. The words "you," "your" and "yours" mean each person submitting this application. The words "we," "us," "our" and "ours" as used below refer to us, the dealer, and to the financial institution(s) selected to receive your application. You authorize us to submit this application and any other application submitted in connection with the proposed transaction to the financial institutions disclosed to you by us the dealers, in addition, in accordance with the Fair Credit Reporting Act, you authorize that such financial institutions may submit your applications to other financial institutions for the purpose of fulfilling your request to apply for credit. This application will be reviewed by such financial institutions on behalf of themselves and us the dealer. You agree that we may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with the proposed transaction and any update, renewal, refinancing, modification or extension of that transaction. You also agree that we or any affiliate of ours may obtain one or more consumer credit reports on you at any time whatsoever. If you ask, you will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which we or our affiliate obtained your credit report. You agree that we may verify your employment, pay, assets and debts, and that anyone receiving a copy of this is authorized to provide us with such information. You further authorize us to gather whatever credit and employment history we consider necessary and appropriate in evaluating this application and any other applications submitted in connection with the proposed transaction. You understand that we will rely on the information in this credit application in making our decision. We may monitor and record telephone calls regarding your account for quality assurance, compliance, training, or similar purposes.

You consent to receive autodialed, prerecorded and artificial voice calls and text messages for servicing and collection purposes from us at the telephone number(s) provided in this credit application, including any cell phone numbers. The consent applies to the dealer, who is the originating creditor in this transaction, as well as any assignee who may purchase your credit contract. You agree that this consent applies regardless of whether you agree to receive telemarketing/sales calls and text messages as provided below.

**I consent to receive autodialed, pre-recorded and artificial voice telemarketing and sales calls and text messages from or on behalf of dealer (or any financing source to which dealer assigns my contract) at the telephone number(s) provided in this credit application, including any cell phone numbers. I understand that this consent is not a condition of purchase or credit.**

Initial to consent here _____
This application may be submitted to the following financial institution(s) (Name(s) and Address(es)) Land Rover Cherry Hill 2000NJ-70 Cherry Hill, NJ 08003

### BY SIGNING BELOW, YOU CERTIFY THAT YOU HAVE READ AND AGREE TO THE TERMS AND DISCLOSURES ON THE PAGES OF THIS APPLICATION.

X Kasaun Moales    03/05/2025
APPLICANT'S SIGNATURE    DATE

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL




Retail

PAID

PME
BALA CYNWYD, PA
APR 07, 2025

UNITED STATES
POSTAL SERVICE®

06604

$31.40

RDC 07

R2305P151268-20

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE

ONE RATE • ANY WEIGHT



To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

**UNITED STATES POSTAL SERVICE** ® | **PRIORITY MAIL EXPRESS** ®

EI 519 801 510 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE ( 203 ) 881-6217

K Moales
c/o 55 Wessels Ave Suite 8
Bridgeport, CT 06610

**PAYMENT BY ACCOUNT (if applicable)**

USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☑ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE ( 203 ) 579-5861

United States District Court
Brian McMahon Federal Building
915 Lafayette Boulevard
Bridgeport, CT

ZIP + 4® (U.S. ADDRESSES ONLY)

0 6 6 0 4 - _ _ _ _

▪ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
▪ $100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day | ☑ 2-Day | ☐ Military | ☐ DPO

PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage
19004 | 4/9/25 | $ 31.40

Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee
4/7/25 | ☐ 6:00 PM | $ | $

Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee
5:00 | ☐ AM ☑ PM | $ | $

Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees
$ | $ | 31.40

Weight | ☐ Flat Rate | Acceptance Employee Initials
lbs. ozs. | | $ 31.40

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY) | Time | Employee Signature
| ☐ AM ☐ PM |

Delivery Attempt (MM/DD/YY) | Time | Employee Signature
| ☐ AM ☐ PM |

LABEL 11-B, MAY 2021    PSN 7690-02-000-9996

◁ **PEEL FROM THIS CORNER**



PS10001000006

EP13F October 2023









UNITED STATES POSTAL SERVICE